IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

Joseph Cicon and Sandra Cicon        :

    Plaintiffs                          :      Case No. 3:14-CV-2187

    v.                                  :

State Farm Mutual Automobile         :
Insurance Company
                      : Judge Richard P. Conaboy
    Defendant.                          :

**FILED**
**SCRANTON**

AUG 2 1 2015

PER _____ CTC
DEPUTY CLERK

**Memorandum**

**I.   Background.**

    We consider here Plaintiffs' motion to compel production of
documents from Defendant's claims file concerning its investigation
of an accident of September 1, 2012.  On that day, Joseph Cicon,
who was a covered person under an automobile insurance policy
issued by the Defendant, was operating a motor vehicle that was
struck from the rear by a motor vehicle operated by a driver who
had failed to purchase insurance coverage.  At the time of the
accident, Plaintiff Cicon's vehicle was covered by a State Farm
policy that provided $100,00.00/$300,000.00 in bodily injury
coverage and uninsured motor vehicle coverage ("UM") in the amount
of $50,00.00/$100,000.00.  The policy in question covered two
vehicles and also provided for stacked coverage.

    Plaintiff Joseph Cicon suffered various physical injuries in
the aforementioned accident.  The parties differ regarding the

1

severity and effect of those injuries.  At some indeterminate point prior to July 9, 2013, Plaintiff made a demand for UM benefits under the aforementioned State Farm policy. [1] Because July 9, 2013 was the date the parties agree that Plaintiff Joseph Cicon appeared for an independent medical examination with Dr. Anthony DePietro at Defendant's request, the Defendant had obviously been made aware of Plaintiff's UM claim prior to that date.  Neither party has graced this Court, however, with documentation as to when Defendant was placed on notice of the UM claim or when Dr. DePietro's IME report was transmitted to the Defendant.

On or about February 10, 2014, Defendant offered $20,000.00 to resolve Plaintiff's UM claim.  Plaintiff then retained counsel who, by letter dated February 18, 2014 (see Doc. 25-1, Exhibit B), advised Defendant that if the policy limits of $100,000.00 were not tendered by February 28, 2014, an action for Bad Faith would be filed.  It is thus clear that Defendant was aware no later than February 18, 2014 that it could reasonably anticipate litigation of this matter.

Defendant has produced a "privilege log" (see Doc. 25-1, Exhibit A) which describes, in cursory fashion, communications between Defendant and legal counsel as well as internal communications between various of its claims personnel.  This

---

[1] The parties agree that Defendant has paid first party medical and lost income benefits to Plaintiff Joseph Cicon.

"privilege log" also indicates the dates these communications occurred and whether they are being withheld or will be made available in redacted form.  Finally, the grounds upon which these documents are classified as "withheld" or "redacted" are listed (i.e. work product, attorney-client, anticipation of litigation, or irrelevance).

## II.  Applicable Law.

Discovery may be obtained regarding any non-privileged matter that is relevant to any party's claim and the Court may order discovery of any matter relevant to the subject matter involved in the action for good cause.  See Federal Rule of Civil Procedure 26(b)(1).  Relevance in this context has been "construed broadly to encompass any matter that could bear on, or that could reasonably lead to other matter that could bear on any issue that is or may be in the case."  Oppenheimer Funds v. Sanders 437 U.S. 340, 351 (1978).

Rule 26(b)(3)(A) of the Federal Rules of Civil Procedure states:

> Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent).  But,

3

subject to Rule 26(b)(4), those materials may be
discovered if:

> (i) they are otherwise discoverable under Rule
> 26(b)(1); and
>
> (ii)the party shows that it has substantial need for
> the materials to prepare its case and cannot,
> without undue hardship, obtain their substantial
> equivalent by other means.

A document is prepared "in anticipation of litigation,
when the nature of the document in the context of the case
indicates that it has been prepared or obtained because
litigation may ensue. In re Grand Jury Proceedings, 604 F.2d
798, 803 (3d. Cir. 1979). However, documents prepared in the
ordinary course of business are not absolutely immune from
discovery. Holmes v. Pension Plan of Bethlehem Steel Corp.,
213 F.3d 124, 138 (3d. Cir. 200).

A party seeking to shield production of documents by
assertion of the work-product doctrine must carry the burden
of demonstrating that the documents had been prepared in
anticipation of litigation. Conoco, Inc. v. U.S. Department
of Justice, 687 F.2d 724, 730 (3d. Cir. 1982). However, even
if such a showing can be made, work-product protection can be
waived through a showing of good cause. Even where the work-

4

product doctrine is applicable, its protection may be waived
upon a showing of good cause.   In Re Grand Jury Proceedings,
supra, at 803.

## III. Discussion.

Plaintiff seeks three different types of information via
his motion to compel.  These are: (1) documents that detail
communications between Defendant and its attorneys in relation
to this case;[2] (2) documents that detail communications
between Defendant's employees or agents regarding this matter;
and (3) documents establishing the reserves the Defendant has
set for this matter and the rationale for that figure.  The
Court shall consider these items in turn.

### a.    Communications Between Defendant and its Attorneys.

The discoverability of privileged matter is governed in
this diversity-based action by the substantive law of
Pennsylvania. See United Coal Companies v. Powell Construction
Company, 839 F.2d 958, 965 (3d. Cir. 1988)(citing Rule 501 of
the Federal Rules of Evidence).   The Superior Court of
Pennsylvania has recognized the near sacrosanct nature of the
attorney-client privilege.
"The attorney-client privilege has deep historical roots
and indeed is the oldest of the privileges for
confidential communications in common law."  Nationwide

---

[2] Defendant has been represented by two different law firms as this case has evolved.

Mutual Ins. Co. V. Fleming, 924 A.2d 1259, 1263 (Pa.Super 2007). More recently, the Pennsylvania Supreme Court discussed the important underlying purpose of the privilege to foster a free and open exchange of relevant information between a lawyer and his client. Gillard v. AIG Ins., Co. et al, 15 A.3d 44, 47 (Pa.2011). The Gillard court determined, in the context of a bad faith claim much like that in the instant case, that the attorney-client privilege is to be interpreted broadly and that it "operates in a two-way fashion to protect confidential client-to-attorney or attorney-to-client communications made for the purpose of obtaining or providing professional legal advice." (Gillard at 59).[3]

Plaintiff argues that, because many of the attorney-client communications referenced in Defendant's "privilege log" occurred before the filing of the complaint that initiated this case, "it is unlikely that the communications prior to the commencement of any action in this matter contain any discussions entitled to the attorney-client privilege." (Doc. 27 at 5). The Court cannot agree. Because Plaintiff retained counsel and threatened litigation via the aforementioned letter of February 18, 2014, all communications between Defendant and its various attorneys that post-date

---

[3] The Gillard court also recognized that the attorney-client privilege is limited in the sense that it does not cover business advice or protect clients from factual investigations. Gillard, supra, at 52 n.8. These limitations have no application in this case.

February 18, 2014 are very likely, if not presumptively, concerned with the Defendant's defense of this matter.  Simply put, Plaintiff has cited no evidence that the attorney-client communications Defendant seeks to shield were related to mere business purposes.  According, this Court will afford all communications between Defendant and its attorneys the broad protection favored by the Pennsylvania Supreme Court in Gillard, supra.

**b.  Internal Communications Between Defendant's Employees Regarding This Claim.**

Defendant asserts that various internal communications between its employees regarding this claim are subject to the work product doctrine.  The mental impressions and opinions of a party and its agents are not generally protected by the work product doctrine unless they were prepared in anticipation of litigation by or for the party's attorney.  U.S. v. Nobles, 422 U.S. 225, 238 (1975).  The work product doctrine does not protect materials prepared in the ordinary course of business. (Id.).  The party that asserts the protection of the work product doctrine has the burden of showing that the documents it seeks to shield qualify for protection.  Holmes v. Pension Plan of Bethlehem Steel Corp., 213 F.3d 124, 138 (3d. Cir. 2000).  Even in a situation where the discovery of work product documents is ordered, a Court must take care to

7

protect against disclosure of an attorney's mental impressions or legal theories which may be embedded in the documents. See Rule 26 (b)(3) of the Federal Rules of Civil Procedure.

The information that Plaintiff seeks in the nature of these inter-office communications is obviously germane in the context of a case that invokes Pennsylvania's Bad Faith Statute. Pursuant to that statute, a Plaintiff must demonstrate, by clear and convincing evidence, "(1) that the insurer lacked a reasonable basis for denying benefits; and (2) that the insurer knew or recklessly disregarded its lack of a reasonable basis." Klinger v. State Farm Mut. Ins. Co., 150 F.3d 230, 233 (3d. Cir. 1997)(citing Terletsky v. Prudential Property and Casualty Ins. Co., 649 A.2d 680, 688 (Pa. supra. 1994). This is a difficult showing to make and an insurance company's claims file on such a contested matter obviously contains information relevant to the resolution of such a case. Robertson v. Allstate Ins. Co., 1999 WL 179754(E.D. Pa. 1999).

Numerous communications between Defendant's employees are described on Defendant's "privilege log" regarding Plaintiff's claim. The Court will categorically exclude from production those that post-date Plaintiff's counsel's letter of February 18, 2014 threatening litigation. The Court will presume that all inter-office communications in this file after that date

8

were prepared in anticipation of litigation and are, thus, properly excluded from discovery except in the redacted form Defendant has proposed.  On the other hand, numerous inter-office communications are described in the "privilege log" that pre-date the time (February 18, 2014) that Defendant can reasonably be seen as having anticipated litigation due to Plaintiff's counsel's aforementioned letter.[4]  The Court concludes that inter-office communications before that date were prepared in the ordinary course of business, and, consequently, are not subject to work product protection. U.S. v. Nobles, supra, at 238.  To the extent that any of these documents contain explicit discussion of an attorney's advice or direction, Defendant may redact the document to exclude such excerpts consistent with the earlier discussion of attorney-client privilege.

### c.    Reserve Information.

Defendant resists discovery of the amount reserved for Plaintiff's claim by asserting, essentially, that the connection between the amount reserved for a claim and its ultimate worth is so tenuous as to make the information

---

[4] The Court does recognize that : "Prudent parties anticipate litigation and begin preparation prior to the time suit is formally commenced."  Martin v. Bally's Park Place Hotel & Casino, 983 F.2d 1252, 1260.  (3d. Cir. 1993).  However, the Court has been given no reason to believe that the Defendant anticipated litigation in this matter before Plaintiff's counsel transmitted the aforementioned letter of February 18, 2014.

irrelevant in the context of a bad faith claim. (Doc. 25 at 6; Doc. 26 at 4). As Defendant acknowledges, however, there is a split of authority regarding the production of reserve information in a bad faith case. (Doc. 25 at 6). Trial courts come down on both sides of this question. While this Court does recognize that reserves are sometimes initially set on the basis of incomplete information and this fact can sometimes justify a case being resolved for a much different amount that the initial reserve would seem to justify, the Court believes that the information may be relevant, particularly in the bad faith context. To the extent an insurer's reserve for a case is much larger than the amounts offered its insured in settlement, a jury might reasonably infer, in the absence of some plausible explanation by the insurer, that the insurer was disregarding its obligation to deal reasonably with its insured. Accordingly, Defendant will be directed to provide its reserve information regarding Plaintiff Joseph Cicon's claim.[5]

## IV.   Conclusion.

Plaintiff's motion to compel will be granted in some respects and denied in other respects in keeping with the Court's discussion above. An Order specifically setting forth

---

[5] Inasmuch as Sandra Cicon has reportedly settled her UM claim (Doc. 25 at 7, n.16), reserve information on her claim need not be furnished.

the scope of the production the Defendant must provide will be filed contemporaneously herewith.

BY THE COURT

Honorable Richard P. Conaboy
United States District Court